Dear Senator Romero:
This office is in receipt of your Attorney General's opinion request premised upon the law for Premiums on Criminal Bail Bonds, wherein you presented the following questions as we understand them:
 1) Is it mandatory for a bonding company to charge 12% of the face value of the bond?
 2) Does this statute "fix prices" contrary to state or federal law?
 3) Does a mandatory fixed fee discourage competition or limit competition among various bond companies?
 4) Is a bonding company allowed to offer credit for the required fee?
 5) Is the bonding company subject to a fine or penalty if for any reason the entire 12% fee is not collected?
(1) It is the considered opinion of this office that explicit language of the Statute answers question one.
Louisiana Revised Statute 22:1404.3 states, in pertinent part:
 The premium rate set for commercial surety underwriters writing criminal bail bonds in the various courts throughout the state of Louisiana shall not be subject to the Louisiana Insurance Rating Commission's rates, but shall be set and adjusted by the legislature. The rate for all commercial surety underwriters writing criminal bail bonds in the state of Louisiana shall be twelve percent of the face amount of the bond, or sixty dollars, whichever is greater. Any additional fee authorized by R.S. 13:718(1)(2) shall not be included in this premium rate and shall be exclusive of the limit set by this Section. All other provisions of the code *Page 2 
relating to enforcement of the rate shall be effective and enforced in accordance with all parts of this Section. [emphasis added]
The phrase "[t]he rate for all commercial surety underwriters writing criminal bail bonds in the state of Louisiana shall be twelve percent of the face amount of the bond" clearly indicates a mandatory charge of 12% on the face value of the bond for all bonding companies.
(2) We believe the second question, does this statute "fix prices" contrary to state or federal law, is addressed in the Federal Code 15 U.S.C.A. § 1012 article, which states:
(a) State regulation
 The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business. [Emphasis added.]
(b) Federal regulation
 No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C.A. 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.
Specifically, the regulation of the insurance rates in the State of Louisiana is explicitly acknowledged, and thus authorized, by both state and federal law. Accordingly, it is the Attorney General's Office's opinion that proper regulation (to "fix prices") of the insurance companies, including commercial surety underwriters issuing bail bonds, is clearly lawful and not contrary to state or federal laws.
(3) The third query, does a mandatory fixed fee discourage competition or limit competition among various bond companies, would require both speculation and extrapolation; moreover, the question is not truly legal in nature. It is actually requesting our office to determine policy, and predict future economic impacts of said policy; therefore, we have determined that issuing an opinion on this question would be highly inappropriate.
However, the querent may wish to direct his attention to Louisiana Revised Statute 22:1402, which declares the purpose of rate regulation:
The purpose of this Part is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly *Page 3 
discriminatory, and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this Part. Nothing in this Part is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit or encourage, except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This Part shall be liberally interpreted to carry into effect the provisions of this Section.
The criminal bail bonds, as issued by commercial surety underwriters, fall within the scope of the insurance and surety laws of this state, except where otherwise noted, such as Louisiana Revised Statute 22:1404.3, which provides that the rates shall be set and adjusted by the legislature, as opposed to the Insurance commission.
(4) Our carefully considered opinion to your fourth question, is a bonding company allowed to offer credit for the required fee, is a matter of interpretation of the above mentioned Louisiana Revised Statute 22:1404.3. We feel that the statute mandates the amount of payment and not the method of payment. Therefore, if a company, in the spirit of American Capitalism, wishes to take only cash, they may, or if a company wishes to offer a "credit" system or other incentives and bonuses, there appears to be nothing in the law that would prevent this.
(5) Finally, we reach your last query, is the bonding company subject to a fine or penalty if for any reason the entire 12% fee is not collected. We believe the answer you are looking for is found within Louisiana Revised Statute 22:1447, which gives the penalties for failure to comply with written orders or directives:
 If any insurance company or rating organization fails to comply with a written directive or order issued by the Louisiana Insurance Rating Commission pursuant to this Part within thirty days of the issuance thereof, the Louisiana Insurance Rating Commission may levy and receive a fine of up to twenty-five thousand dollars. The penalty shall not be imposed until such time that the Louisiana Insurance Rating Commission makes a finding that the penalty is warranted in a proper hearing, held in the manner provided in Part XXIX of Chapter 1 of this Title.
A commercial surety underwriter is regulated by the Louisiana Insurance Rating Commission, an exception existing within the above mentioned law, Louisiana Revised Statute 22:1404.3, which gives express authority, to set the criminal bail bond amount, to the legislature. Accordingly, if a bonding company fails to comply with Louisiana Revised Statute 22:1404.3, a law whose purpose is provided under the above mentioned Louisiana Revised Statute 22:1402, then it is our reasonably deliberated opinion that Louisiana Revised Statute 22:1447, which gives the Louisiana Insurance Rating Commission the discretion to enforce the regulations levied, would subject said bonding company to the penalties contained therein. *Page 4 
It is our continuing desire to lend aid to the public servants of the state such as yourself, Senator, and we pray that the foregoing Opinion has been responsive to your question, of value, and helpful.
Very truly yours,
 CHARLES C. FOTI JR. ATTORNEY GENERAL
 BY: _______________________ D. MARK VALENTINE ASSISTANT ATTORNEY GENERAL